## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | : | |
|   COMMISSION, | : | CIVIL ACTION |
|       Plaintiff, | : | |
| | : | |
| RAYMOND ROSS, | : | |
|       Intervener/ | : | |
|       Counterclaim Defendant, | : | |
| | : | |
|       v. | : | |
| | : | |
| THE VANGUARD GROUP, INC., | : | |
|       Defendant/ | : | NO.  04-cv-4126 |
|       Counterclaim Plaintiff | : | |

### MEMORANDUM AND ORDER

PRATTER, DISTRICT JUDGE                                                    APRIL 7, 2006

On November 7, 2005, The Vanguard Group, Inc. ("Vanguard") filed counterclaims against Intervener Plaintiff Raymond Ross alleging copyright infringement, misappropriation of trade secrets, and breach of contract.  Mr. Ross timely filed a motion to dismiss the counterclaims, which Vanguard opposes.  The Court heard counsel's ably presented oral arguments on the issues on April 3, 2006.  For the reasons set forth more fully below, the Court denies the motion to dismiss.

## I.     FACTS AND PROCEDURAL HISTORY

In March 1993, Mr. Ross, an African-American, began his employment with Vanguard as an Information Engineer in Vanguard's Information Technology Group.  During 1996 Mr. Ross began to work on Vanguard's Year 2000, or "Y2K," Project to identify and solve problems related to the arrival of the new millenium.  Mr. Ross developed computer programs ultimately referred to as "Scan250C," "ScanOpt," "ScanPro," and "FormPro" (collectively "JCL Generator

Software").  Mr. Ross alleges that he conceptualized the program before his employment with

Vanguard and continued to create and develop the program on his own time and with his own

resources.  Vanguard contends, however, that Mr. Ross developed the program during the course

of his employment.  Consequently, for a number of reasons, including contractual undertakings,

Vanguard claims ownership in the JCL Generator Software.  Mr. Ross claims that the JCL

Generator Software is his.

Late in 2001 Mr. Ross was transferred to Vanguard's Production Services Group's

Institutional Technology Team.  Mr. Ross alleges that he complained to a Vanguard Human

Resources Representative in April 2002 that he was being denied adequate work assignments

based on his race.  Mr. Ross claims that he continued to suffer disparate treatment.  On

December 16, 2002, he was notified that his performance would receive a "needs improvement"

rating, the lowest rating an employee at Vanguard can receive.  Mr. Ross contends that he then

complained to Vanguard's Robert Yale that the "needs improvement" rating was the result of

race discrimination.  Mr. Ross asserts that Vanguard did not take any action, investigative or

otherwise, based on his complaints.

On January 6, 2003, Mr. Ross lodged his complaints of racial discrimination with the

Vanguard Human Resources Department.  In its Answer, Vanguard asserts that this was the first

time that Mr. Ross raised his claims of racial discrimination.  Vanguard contends that it

thoroughly investigated Mr. Ross' claims of racial discrimination and found no evidence of such

conduct.  After an internal review of Mr. Ross' proposed evaluation, his rating was changed from

"needs improvement" to "achieves."

Mr. Ross filed a formal Charge of Discrimination on May 30, 2003 with the EEOC

2

alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.  In June 2003, Vanguard approached Mr. Ross about a disagreement it had with his claimed ownership of the JCL Generator Software and instructed Mr. Ross to turn over the JCL Generator Software to its Institutional Systems Environment Support Team.  Vanguard alleges that during a July 23, 2003 meeting between Mr. Ross, Vanguard, and the EEOC, Mr. Ross asserted ownership rights over the JCL Generator Software.  Two days later, Vanguard attorney Matthew Walker, Esquire and Vanguard Human Resources Manager Dawn Lindberg advised Mr. Ross that he must immediately return the JCL Generator Software to Vanguard or face termination.  Several days later, Mr. Ross brought a compact disc containing the JCL Generator Software with a label and accompanying memorandum asserting his ownership interest in the JCL Generator Software to Vanguard.  Mr. Walker and Ms. Lindberg refused to accept the disc encumbered by Mr. Ross' ownership claim.  That same day Mr. Ross filed a second charge of discrimination and retaliation with the EEOC.

On July 29, 2003, Mr. Ross, allegedly induced to do so by the threat of termination, brought the JCL Generator Software to Vanguard.  Mr. Ross claims that he brought the CD to Vanguard without the copyright notice on its face, but "simply requested" that Vanguard refrain from accessing the contents of the Software until the matter was formally adjudicated in court. Vanguard again refused to accept the Software as encumbered by his "request," and Mr. Ross' employment with Vanguard was terminated.  After his termination, on August 5, 2003, Mr. Ross received copyright registrations from the Copyright Office for the individual JCL Generator Software components.

The EEOC filed suit against Vanguard, alleging that it violated Title VII of the Civil

3

Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. when it terminated Mr. Ross in retaliation for his

complaints of race discrimination.  On October 25, 2005, Vanguard answered the Complaint,

and, subsequently, the Court granted Mr. Ross' uncontested Motion to Intervene.  Once formally

part of the suit, Mr. Ross  filed a complaint against Vanguard, asserting claims of retaliation and

race discrimination under Title VII, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §

1981, and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 951, *et seq*.

Vanguard answered Mr. Ross' Complaint and initially asserted no counterclaims.

Thereafter, Vanguard filed a motion requesting leave of the Court to file an amended answer

asserting counterclaims against Mr. Ross.  Both the EEOC and Mr. Ross opposed Vanguard's

motion.  The Court held oral argument on the issue and granted Vanguard's motion to file an

amended answer.  On November 7, 2005, Vanguard filed the counterclaims against Mr. Ross as

described above.  Mr. Ross filed the instant motion to dismiss Vanguard's counterclaims, to

which Vanguard responded.

In Count I of its counterclaims, Vanguard alleges that it is the sole owner of JCL

Generator Software, and that Mr. Ross has infringed on its copyrights for the Software in

violation of 17 U.S.C. § 501.  In support of its copyright infringement assertions, Vanguard

submitted Certificates of Registration issued by the United States Copyright Office issued on

August 22, 2005 to Vanguard for "Scan250C,"  "ScanOpt," "ScanPro." and "FormPro."  In

Count II, Vanguard alleges that Mr. Ross misappropriated its trade secrets through his use of JCL

Generator Software.  In Count III, Vanguard alleges that Mr. Ross violated an employment

agreement signed on August 16, 1993, as well as Crew Member Agreements signed periodically

by him thereafter.

## II.    DISCUSSION

### A.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Such a motion will be granted only when it is "certain that no relief could be granted under any set of facts which could be proved by the plaintiff."  Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  In making such a determination, the Court must accept as true all allegations made in the complaint and all reasonable inferences that may be drawn from those allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  To decide a motion to dismiss, courts can draw such facts and inferences from the complaint, exhibits attached to the complaint, matters of public record (including government agency records), as well as undisputably authentic documents that are attached as exhibits to the motion if the plaintiff's claims are based on the documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.    Copyright Infringement Pursuant to 17 U.S.C. § 501

The lynchpin of the motion to dismiss is Mr. Ross' argument that Vanguard's copyright registrations for the Software must be invalidated and its copyright claims dismissed because, he contends, Vanguard committed fraud on the Copyright Office when it applied for its registrations.  Mr. Ross alleges that Vanguard's registration certificates were fraudulently procured because Vanguard neglected to indicate on its application that the Software was previously registered by Mr. Ross and also failed to identify the existence of preexisting software upon which Vanguard's application was based.  Moreover, asserts Mr. Ross, Vanguard attempted

5

to further mask its alleged fraud by declaring that the software programs at issue were created in 2003 or 2004, after Mr. Ross left Vanguard's employ.  Mr. Ross requests that, based on Vanguard's purposeful misstatements to the Copyright Office, the Court invalidate the copyright registrations supporting the claim for copyright infringement and dismiss Count I of Vanguard's counterclaims.

In support of his argument that Vanguard knew of his ownership claims and previous registrations, Mr. Ross directs the Court's attention to correspondence between Mr. Ross, his counsel, and Vanguard, as well as certain deposition testimony, all of which allegedly shows that Vanguard had knowledge of Mr. Ross' registrations at the time it registered the Software. Mr. Ross also requests that the Court examine a number of public records – namely the parties' respective registrations – to infer that Vanguard committed fraud.  Specifically, Mr. Ross argues that the absence of any mention of his registrations in the Vanguard registrations is evidence that Vanguard committed fraud.

Vanguard argues that the motion to dismiss should be denied because its counterclaim contains the elements of a claim for copyright infringement, namely, (1) Vanguard's ownership and (2) copying by the Mr. Ross.  Vanguard argues that the Court should not draw an inference of fraudulent procurement based on materials that are not properly considered in connection with a motion to dismiss.  Specifically, Vanguard asserts that it has sufficiently alleged ownership of the copyrights in that copyright registrations were issued to Vanguard, which registrations constitute *prima facie* evidence that Vanguard owns the works at issue.  Vanguard contends that it has properly alleged copying by Mr. Ross because it specifically alleged that Mr. Ross copied the Software after his employment was terminated and that he had access to the Software and

reproduced identical or substantially similar software.  Vanguard argues that the motion to dismiss is improper because Mr. Ross does not cite to any allegations in the counterclaims, exhibits, or public record to support his claims, but rather relies exclusively on deposition testimony and other outside-the-record documents in requesting that the Court make an inference of fraudulent intent.

To establish a claim for copyright infringement Vanguard must establish both "(1) ownership of a valid copyright, and (2) copying by the defendant." FMC Corp. v. Control Solutions, Inc., 369 F. Supp. 2d 539, 555 (E.D. Pa. 2005); 17 U.S.C. § 501.  To bring a valid copyright infringement action, the plaintiff first must have a copyright registration.  17 U.S.C. § 411.  A copyright registration received before, or within five years from, the first publication of the copyrighted work is "*prima facie* evidence of the validity of the copyright."  17 U.S.C. § 410(c); Schiffer Publ'g v. Chronicle Books, LLC, No. 03-4962, 2004 U.S. Dist. LEXIS 23052, at *17 (E.D. Pa. Nov. 12, 2004).  Once a copyright proponent makes this showing, the burden then shifts to the defendant to "prove the invalidity of the plaintiff's copyrights." Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 668-69 (3d Cir. 1990).  In order to invalidate a copyright registration, a defendant must show that the plaintiff knowingly failed to advise the Copyright Office of facts which might have led to rejection of the registration application.  Id. at 667.  A misrepresentation is "likely to affect the Register's decision only if it concerns the copyrightability of the work." Gallup, Inc. v. Kenexa Corp., 149 Fed. Appx. 94, 96 (3d Cir. Sept. 19, 2005).

In order to withstand a motion to dismiss, a complaint based on copyright infringement must allege: (1) which specific original works are the subject of the copyright claim; (2) that the

plaintiff owns the copyrights in those works; (3) that the works in question have been registered with the Copyright Office in accordance with the statute; (4) by what acts and during what time the defendant infringed the copyright. Flynn v. Health Advocate, Inc., No. 03-3764, 2004 U.S. Dist. LEXIS 293, at *35-36 (E.D. Pa. Jan. 13, 2004).

The Court finds that Vanguard has properly plead the elements for a copyright infringement claim. Specifically, Vanguard has alleged that: (1) JCL Generator Software is the subject of the copyright claim; (2) Vanguard owns JCL Generator Software; (3) copyrights for the JCL Generator have been registered by Vanguard in accordance with the statute; and (4) Mr. Ross infringed on Vanguard's copyrights after leaving its employ by copying, using, creating derivative works, or otherwise commercially exploiting the Software for his own benefit. Vanguard has supplied the Court with copies of its copyright registrations, which, pursuant to the copyright statute, constitute *prima facie* evidence of ownership.

Although Vanguard has properly plead the elements of a copyright infringement claim, Mr. Ross requests that the Court invalidate Vanguard's copyright registrations and dismiss the counterclaim because Vanguard committed fraud on the copyright office. The Court declines to draw such an inference from the available record at this time. The letters and deposition testimony relied upon by Mr. Ross as evidence of fraud, however compelling they may prove to be on the ultimate issue of fraud on the Copyright Office, are outside the Court's scope of review on this motion to dismiss. As constructed by Mr. Ross, the argument appears to depend in material respects on these letters and deposition excerpts, making it, by reason of their inclusion alone, entirely inappropriate to entertain the motion to dismiss on this basis. Further, the Court declines to draw an inference of fraud from the registration statements themselves. The Court,

8

on the record as it now stands, accepting all allegations in the Vanguard counterclaims as true and making all reasonable inferences, and viewing those facts and inferences in the light most favorable to Vanguard, cannot conclude that "no relief could be granted under any set of facts that could be proved by the plaintiff." <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988). Thus, Mr. Ross' motion to dismiss Count I of the counterclaim will be denied.

### C.  Misappropriation of Trade Secrets

Mr. Ross argues that Vanguard's claim for misappropriation must be dismissed because (1) it does not allege any unlawful activity before the April 19, 2004 effective date of the Pennsylvania Uniform Trade Secret Act, 12 PA. CONS. STAT. ANN. § 5310, *et seq.* ("UTSA"), (2) contains only common law allegations of misappropriation, and (3) requests relief now only available under the UTSA.   Mr. Ross contends that, because Vanguard did not specify unequivocally whether it is bringing its claims under Pennsylvania's Uniform Trade Secrets Act ("UTSA") or the common law, without knowing the dates and acts of the alleged misappropriation, he claims to be unable to answer the counterclaims and prepare defenses and his own counterclaims.

In contrast, Vanguard argues that dismissal is improper because it properly alleged all elements for its claim of misappropriation of trade secrets under both the common law and the UTSA.  Vanguard argues that it pled misappropriation under both the UTSA and common law because it alleges that Mr. Ross may have engaged in separate acts of misappropriation, both before and after the April 19, 2004 enactment of the UTSA, which would give rise to causes of action under the common law, the UTSA or, perhaps, both.

For a claim of misappropriation under Pennsylvania common law, a plaintiff must show:

(1) the existence of a trade secret; (2) the communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret in violation of that confidence; and (4) harm to the plaintiff.  Moore v. Kulike & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003). Pursuant to the UTSA, a plaintiff must show that the defendant disclosed or used plaintiff's trade secret without consent and, at the time of disclosure, the defendant knew that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy. 12 Pa. Cons. Stat. Ann. § 5302.

Here, Mr. Ross was terminated by Vanguard on July 29, 2003, before the effective date of the Act, and Vanguard's counterclaims allege that, after that date, Mr. Ross, "retained, used, converted, and otherwise misappropriated" the JCL Generator Software.  Because the enactment date falls between the date of termination and the time of the filing of the counterclaims, Vanguard argues that it is entitled at least by the pleading prerogative to plead in the alternative that Mr. Ross's conduct constitutes an act of misappropriation occurring before the UTSA, giving rise to a common law claim, or was an act of misappropriation occurring after the enactment, giving rise to a UTSA claim.  As conceded by Mr. Ross at oral argument, Vanguard has pled the elements necessary for misappropriation under both the common law and the UTSA. Mr. Ross takes issue, however, with the lack of specificity in the dates and acts of alleged misappropriation, stating that his defenses and/or potential counterclaims of his own cannot be properly asserted without such information.

Mr. Ross is essentially requesting a more definite statement, and, although Mr. Ross characterizes Vanguard's claims as "cryptic," the Court finds that Vanguard's counterclaim to be sufficiently "clear and unambiguous, with substantial facts alleged which should allow the

defendants to form a 'responsive pleading.'" WIH Mgmt., Inc. v. Heine, 1999 U.S. Dist. LEXIS 14926, at *11-12 (E.D. Pa. Sept. 30, 1999).  Calling for more specific allegations is not a substitute for the discovery process. Id.  Thus, at this time, because Vanguard has properly alleged misappropriation of trade secrets under both the common law and the UTSA, dismissal of Vanguard's counterclaim is improper and will be denied, leaving the parties to move expeditiously into the discovery phase of this aspect of this case.

**D.  Breach of Contract**

Vanguard, in its counterclaims, alleged that Mr. Ross signed an employment agreement, dated August 16, 2003, wherein he allegedly assigned to Vanguard any "right, title, and interest" in any inventions and designs, including programs, "made, conceived or reduced to practice" by Mr. Ross.[1]  Vanguard also asserted that Mr. Ross, beginning in 1996, signed a series of "Crew Member Agreements," which provided, *inter alia*, that any programs developed by him in the

---

[1]  As set forth in Vanguard's counterclaims, the Employment Agreement reads, in pertinent part:

> From this date and until I leave Vanguard's employ, I shall keep Vanguard informed of all inventions, discoveries, developments, modifications, procedures, innovations, systems, programs, or designs (referred to collectively as "inventions and designs") made, conceived or reduced to practice by me, in whole or in part, alone or with others, which either result from any work I may do for, or at the request of Vanguard, or related to Vanguard's present or contemplated activities, investigations, or obligations.  Any such inventions and designs shall be the sole and exclusive property of Vanguard, [sic] assign to Vanguard all my right title, and interest in such inventions and designs.

(Counterclaims at 2-3) .

course of job responsibilities becomes the sole property of Vanguard.[2]  Mr. Ross argues that

Vanguard's claims for breach of contract must fail for lack of consideration because the

contractual documents at issue were allegedly signed without any further benefit to Mr. Ross.

Thus, Mr. Ross necessarily analogizes those employment agreements to restrictive covenants not

to compete, "which allow an employer to restrict an employee's employment after leaving their

job." Zimmer v. CooperNeff Advisors, Inc., No. 04-3816, 2004 WL 2933979, at *5 (E.D. Pa.

Dec. 20, 2004).  Mr. Ross argues that the agreements are invalid for lack of consideration

because the agreements were signed after he began working at Vanguard and there was no new or

additional consideration provided for them.

   Vanguard asserts that its breach of contract claim should not be dismissed because it has

properly alleged that Mr. Ross breached his employment agreements.  Vanguard contends that it

alleged the existence of an employment agreement signed by Mr. Ross on August 16, 1993, as

---

[2]  The Crew Member Agreements (also not attached to the counterclaims or reply), in
pertinent part, read:

> 2.  Any material you create or develop in the course of performing
> your job responsibilities – including but not limited to computer
> codes, macros, design documents, databases, spreadsheets, Lotus
> Notes routines and applications, manuals, brochures, and other types
> of literature – becomes the sole property of Vanguard.  This includes
> any creation/invention significant to the running of out business such
> as hardware or software or any business method or process that could
> be defined in legal terms as "intellectual property."
> . . .
> 4.  Should you leave Vanguard, you are under obligation to not
> remove or take with you, or discuss outside of Vanguard, any
> Company-owned materials or intellectual property, information, or
> invention, whether developed by you or by others.  In addition, you
> may not use confidential client information gained during your
> employment with Vanguard.

(Counterclaims at 3-4).

well as several Crew Member Agreements, and that those various agreements provided that any material that Mr. Ross created or developed in the course of his employment with Vanguard was the sole and exclusive property of Vanguard.  Vanguard argues that it clearly pleaded a breach of those agreements by Mr. Ross' retention, utilization, conversion, and misappropriation of the JCL Generator Software.  Vanguard contends that Mr. Ross' attempt to characterize his employment agreements as restrictive covenants is unavailing because Pennsylvania law treats restrictive covenants and assignments of intellectual property rights differently.

In support of its contention that the employment agreements assigning ownership of intellectual property should not be treated as restrictive covenants, Vanguard cites Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3d Cir. 1985), and Zimmer v. CooperNeff Advisors, Inc., No. 04-3816, 2004 WL 2933979 (E.D. Pa.  Dec. 20, 2004).

In Harsco, the employee argued that the employment agreement he signed, which assigned patent rights to his employer, was invalid for lack of consideration.  Harsco, 779 F.2d at 909.  Approximately fourteen months after his employment began, the employee signed the agreement after management threatened him with termination.  Id. at 908.  Analogizing to restrictive covenants, the employee argued that the employment agreement was unenforceable because the only consideration provided by Harsco was the continuation of his employment.  Id. at 909.  The Third Circuit Court of Appeals found that the district court did not err when it rejected the employee's analogy and concluded that restrictive covenants differ from assignments of patent rights because restrictive covenants hamper a person's ability to make a living while patent assignments only affect property rights to patents.  Id. at 910.  The Court of Appeals held that the employment agreement assigning patent rights to Harsco was supported by adequate

13

consideration because, while the employee agreed that any inventions resulting from his work with Harsco would remain the employer's property, Harsco bound itself under Pennsylvania law to employ the employee for a reasonable period of time.  Id.

Likewise, in Zimmer, a former employee, relying on cases analyzing  restrictive covenants, argued that his employment agreement assigning invention rights to CooperNeff was void for lack of consideration because it was signed after his employment began.  Zimmer, 2004 WL 2933979, at *5.  The court, relying on Harsco, rejected the former employee's position that his employment agreement assigning invention rights should be treated as a restrictive covenant. Id.  The court found that when the employee signed the employment agreement, CooperNeff bound itself to employ the individual for a reasonable period of time, and that such a reasonable period of employment provided the consideration needed to find the employment agreement enforceable.  Id.

Mr. Ross argues that the Court should decline to follow Harsco and should depart from Zimmer because the "restrictive covenants" allegedly signed by Mr. Ross differ from the broad employment agreements in those cases.  Mr. Ross asserts that the "free-floating" invention assignment agreements are categorically different than the employment contracts which contained invention assignment agreements as found in those cases.  Mr. Ross contends that in Harsco and Zimmer the courts found that there were employment contracts, and those employment contracts were supported by the consideration of reasonable employment.  Mr. Ross asserts that the employment agreement and Crew Member Agreements at issue here are not attached to any employment contract, and, thus, must be treated as restrictive covenants.

Mr. Ross' attempts to draw a distinction between the agreements he signed while at

Vanguard and the employment agreements assigning invention rights in <u>Harsco</u> and <u>Zimmer</u> are unavailing.  As is clear on their faces, the employment agreements at issue here, as in <u>Harsco</u> and <u>Zimmer</u>, are not restrictive covenants, and the Court declines to treat them as such.  Mr. Ross' invention assignment agreements only affect his property rights, not his ability to earn a living. They are, therefore, entirely appropriate for consideration pursuant to <u>Harsco</u> and <u>Zimmer</u>.  His employment agreements are supported by adequate consideration because Mr. Ross assigned his invention rights to Vanguard, and Vanguard, in exchange, bound itself to employ Mr. Ross for a reasonable period of time, which, it appears, Vanguard ultimately did.  Vanguard is entitled at this juncture to argue that it was that period of continuing employment that provided the consideration necessary for the employment agreements to be enforceable.  Thus, the Court finds that Mr. Ross' employment agreement not unenforceable for lack of consideration, and, because Vanguard has properly pled breach of those agreements, Vanguard's claim for breach of contract will not be dismissed.

## III.  CONCLUSION

For the foregoing reasons, Mr. Ross' Motion to Dismiss will be denied.  An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | : | |
| **COMMISSION,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **RAYMOND ROSS,** | : | |
| **Intervener/** | : | |
| **Counterclaim Defendant,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE VANGUARD GROUP, INC.,** | : | |
| **Defendant/** | : | **NO.  04-cv-4126** |
| **Counterclaim Plaintiff** | : | |

**ORDER**

AND NOW, this 7th day of April, 2006, upon consideration of Intervener/Counterclaim

Defendant Ross' Motion to Dismiss (Docket No. 39), and the Response and Reply thereto

(Docket Nos. 43, 44), it is hereby ORDERED that the Motion to Dismiss is DENIED.  Mr. Ross

shall file and serve his answer to the counterclaim within 20 days of the date of this Order.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE